IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JP MORGAN CHASE BANK, N.A., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-CV-686-GKF-FHM |
| WELLS FARGO BANK, N.A., | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Motion to Dismiss [Doc. No. 20] of defendant Wells Fargo Bank, N.A. ("WFB"). For the reasons set forth below, the motion is granted.

## I. Procedural Background

This dispute arises from the allegedly unlawful solicitation of JP Morgan clients for the benefit of Wells Fargo. On August 19, 2016, Laurisa Anderson and Steven Remchuk terminated their employment with JPMorgan Securities, LLC ("JPMS"), in order to join Wells Fargo Advisors ("WFA"). Many of JPMS's clients left with them. As a result, on September 8, 2016, JPMS filed a previous action in this court for a temporary injunction, pending arbitration before the Financial Industry Regulatory Authority ("FINRA"). *See JP Morgan Secs. LLC v. Anderson, et al.*, Case No. 16-CV-584-GKF-FHM. JPMS's claims against Anderson and Remchuk—breach of contract, misappropriation of trade secrets, breach of fiduciary duty, tortious interference, unjust enrichment, conspiracy, and conversion—are now the subject of FINRA arbitration proceedings.

Over a month later, on October 10, 2016, JP Morgan Chase Bank, N.A. ("JPMC") filed this suit against WFB in Tulsa County District Court. Neither JPMC nor WFB ever directly employed Anderson or Remchuk. Nor are they members of FINRA. JPMC alleges claims for

tortious interference with customer relationships, tortious interference with contract, misappropriation of trade secrets, unjust enrichment, and conspiracy.  The action was removed to this court on November 14, 2016.  Some months later, WFB's motion followed.

## II. Legal Standard

Fed. R. Civ. P. 12(c) allows a party to move for judgment on the pleadings.  Motions under Rule 12(c) "are treated as a motion to dismiss under Rule 12(b)(6)."  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  To survive a motion to dismiss, a petition must contain "enough facts to state a claim that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (quotation marks omitted).  And while it will draw reasonable inferences in the plaintiff's favor, the court need not accept conclusory allegations as true.  *See Thomason v. First Pryority Bank*, No. 09-CV-796-GKF-TLW, 2010 WL 2079699, at *1 (N.D. Okla. May 21, 2010).  The plausibility requirement helps "weed out" claims that lack any reasonable prospect of success.  *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008).

## III. Analysis

This dispute turns on whether WFP is a proper party defendant.  In short, it is not.  All of JPMC's allegations presume some sort of employment relationship between WFB, Anderson, and Remchuk.  *See, e.g.*, [Doc. No. 2, p. 7, ¶ 15] ("[T]he Solicited Employees resigned *en masse* and followed Anderson and Remchuk in establishing relationship[s] with Defendant."); [*Id.* at 11, ¶ 35] ("[T]he actions of Anderson and Remchuk occurred after they had commenced negotiations or entered into agreements with Defendant[.]"); [*Id.* at ¶¶ 39–40] ("The solicitation . . . was done with the knowledge and encouragement of Defendant and in the course and scope of

their relationship with Defendant."). And the majority of JPMC's clams rely on *respondeat superior* as a basis for liability. *See* [*Id.* at 12–14, ¶¶ 44, 51, 56] (Counts I, III, and IV).

JPMC replies that its tortious interference (Count II) and conspiracy (Count V) claims do not rely on *respondeat superior*, and therefore remain actionable. The court disagrees. The tortious interference claim (Count II) presupposes that WFB recruited, hired, and employed Remchuk and Anderson, inducing them to breach their employment agreements with JPMS. [Doc. No. 2, p. 13, ¶ 48] (referring to Anderson and Remchuk's "establish[men] [of] new relationships with Defendant"). And the conspiracy claim (Count V) merely incorporates other causes of action and allegations by reference. [*Id.* at 14–15, ¶ 59]. In any event, JPMC's allegations—which offer the factual basis for its claims—*do* presume an employment arrangement between WFB, Anderson, and Remchuk. *Supra*, at 2. That factual foundation cabins the scope of JPMC's claims.

The only question, then, is whether JPMC has adequately pled an employment relationship between WFB, Anderson, and Remchuk. It has not. JPMC acknowledges that WFA—not WFB—directly employs Anderson and Remchuk. *See* [Doc. No. 20, p. 7]; [Doc. No. 26, p. 10]. And the court need not "take [WFB's] word" for it, [Doc. No. 26, p. 1]; JPMS—a wholly-owned subsidiary of JPMC—alleges as much in other filings before this court and in related arbitration proceedings. *See* [Doc. No. 20-5, p. 2, ¶ 2] ("This dispute arises out of Defendants' sudden coordinated departure from JP Morgan . . . and the Defendants' unlawful campaign to solicit clients and employees on behalf of their new employer, Wells Fargo Advisors[.]"); [Doc. No. 20-6, p. 2, ¶ 1] ("This dispute arises out of Respondents' sudden, coordinated departure from JP Morgan . . . and the Defendants' unlawful campaign to solicit clients and employees on behalf of their new employer, Wells Fargo Advisors[.]"). Nothing in

3

the related action even hints at any employment relationship—joint or otherwise—between Anderson, Remchuk, and WFB.

In response to the motion, JPMC insists WFB jointly employed Anderson and Remchuk with WFA. To be sure, corporate affiliates may jointly employ workers for purposes of common law tort liability. *See Zinn v. McKune*, 143 F.3d 1353, 1361 (10th Cir. 1998) (Briscoe, J., concurring) (citing the Restatement (Second) of Agency § 226 (1958)). But that requires a showing of "sufficient control over the terms and conditions of the employment of a worker formally employed by another." *See id.* JPMC does not satisfy that standard here.

The Petition contains no suggestion that WFB controlled the terms and conditions of Anderson and Remchuk's employment. *See Mitchem v. Edmond Transmit Mgmt., Inc.*, 2012 WL 2370669, at *4 (W.D. Okla. June 22, 2012) ("Construed most liberally in Plaintiff's favor, the Fourth Amended Complaint does not allege any factual contention which, if taken as true, could satisfy the joint employer test[.]"). And it does not allege that WFB exerted any influence over hiring, firing, compensation, supervision, discipline, or benefits decisions related to WFA employees. *See Hopper v. Re/Max Properties, Inc.*, No. 14-cv-03456-RM-STV, 2017 WL 772304, at *3–13 (D. Colo. Feb. 28, 2017). Perhaps most saliently, the Petition offers no detail about what role, if any, WFB played in Anderson and Remchuk's transition from JPMS to WFA.

JPMC notes that WFB and WFA are corporate affiliates. And that is true, as far as it goes. But it is not very far. To start, WFA "is a wholly owned subsidiary of Wachovia Securities Financial Holdings, LLC, which is, in turn, a wholly owned subsidiary of Wells Fargo [&] Company," *See Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 474 (4th Cir. 2012); it is not—

as JPMC contends—a subsidiary of WFB.[1]  The Annual Report excerpt provided by JPMC supports that conclusion.  It notes that WFA is a "non-bank affiliate of Wells Fargo & Company," whereas "Wells Fargo Bank, N.A. is a bank affiliate of Wells Fargo & Company." [Doc. No. 26-5, p. 2].  Mere corporate affiliation does not establish joint employment.  And as noted above, a wholly-owned subsidiary of JPMC acknowledges in related proceedings that WFA is Anderson and Remchuk's employer.  *See* [Doc. No. 20-5, p. 2, ¶ 2]; [Doc. No. 20-6, p. 2, ¶ 1].  In sum, JPMC "does very little to refute [WFB's] claim that the wrong [corporate entity] was named in this case."  *Cf. Kaufman v. HSBC USA, Inc.*, No. 4:09-CV-318-GKF-TLW, 2010 WL 1410097, at *3 (N.D. Okla. Mar. 31, 2010).

So, why sue WFB?  To circumvent FINRA arbitration.  The Petition openly recognizes that Anderson and Remchuk's direct employers—WFA and JPMS—are "members of [FINRA], and as such, are subject to certain . . . regulations and obligations including arbitration." [Doc. No. 2, p. 6, ¶ 6].  The banking entities in this suit, however, "are not members of FINRA, and therefore, are not obligated to arbitrate disputes between them." [*Id.* at ¶ 7].  That kind of procedural gambit—given WFA's obvious status as the proper entity in this case—compels the court to deny JPMC's request for leave to amend.  *Cf. Conway v. Bank of Okla., N.A.*, No. 07-CV-677-JHP-SAJ, 2008 WL 1767088, at *2 (N.D. Okla. Apr. 11, 2008) ("There is no evidence in the record to establish that Plaintiff chose to sue the wrong entity in the initial Complaint as part of some tactical or strategic decision[.]").  JPMC has sought substantial discovery from WFA in this case, from document requests to deposition of a corporate representative.  And the court suspects these efforts are designed to drag WFA into litigation outside the confines of

---

[1] The court notes that JPMC has shifted from calling WFA a "subsidiary" of WFB [Doc. No. 2, p. 5] to a "related" entity in subsequent briefing [Doc. No. 26, pp. 6, 9].  In any event, JPMC does not identify any public record that contradicts the corporate ownership structure of WFA as set out in *Brand*, 671 F.3d at 474.

arbitration, or to obtain discovery materials JPMS cannot in related arbitration proceedings with Remchuk and Anderson.

The court also denies JPMC's request as untimely. The deadline for amending pleadings or joining additional parties passed months ago, on February 1, 2017. [Doc. No. 18]. And expert disclosures are due within a matter of weeks. [Doc. No. 33]. JPMC offers "no adequate explanation for the delay" in espousing a joint employer theory of liability until this point; WFB denied any employment relationship with Anderson and Remchuk as early as November 21, 2016, and again in response to discovery requests. [Doc. No. 13, pp. 6–7, ¶¶ 35–38; Doc. No. 28, p. 10]. Allowing JPMC to change the gravamen of its Petition this late in the game—with unknown consequences—is unwarranted. *See Marshall v. Whirlpool Corp.*, No. 07-CV-534-JHP-TLW, 2010 WL 348344, at * 4 (N.D. Okla. Jan. 26, 2010). That is especially where JPMC fails to provide any proposed amendment curing the joint employment issue.

JPMC "maintain[s] [its] broad accusations against [Wells Fargo entities] collectively." *See Jensen v. America's Wholesale Lender*, 425 F. App'x 761, 763 (10th Cir. 2011). And while discovery might identify certain particulars of the extent of WFB's relationship—if any—with Anderson and Remchuk, "our pleading standard does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See id.* (internal quotation marks and citation omitted).[2]

---

[2] Because the court does not rely on the disputed FINRA Broker Check Reports, it need not treat this motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Public filings—which the court does consider—are "routinely consider[ed] . . . at the motion to dismiss stage." *See Thomas v. Metro. Life Ins. Co.*, No. CIV-07-121-F, 2008 WL 4619822, at *5 (W.D. Okla. Oct. 16, 2008); *Hodgson v. Farmington City*, –F. App'x–, 2017 WL 83749, at *2 (10th Cir. Jan. 10, 2017) (judicial notice of public records does not require conversion to summary judgment).

WHEREFORE, the Motion to Dismiss of Defendant Wells Fargo Bank, N.A. [Doc. No. 20] is granted and JP Morgan Chase Bank, N.A.'s Request for Leave to Amend [Doc. No. 26, p. 12] is denied.

IT IS SO ORDERED this 4th day of May, 2017.

*Gregory K. Frizzell*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT